UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#48/61/51/52**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5062 PSG (AJWx) | Date | February 6, 2014 |
|---|---|---|---|
| Title | Brown v. Ambow Education Holding Ltd., *et al.* | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge |
|---|---|

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:** **(In Chambers) Order GRANTING the Motions to Dismiss WITH LEAVE TO AMEND**

Before the Court are two Motions to Dismiss Plaintiffs' Second Consolidated Amended Complaint ("SCAC") filed by Defendants Mark Harris ("Harris"), Daniel Phillips ("Phillips"), and Tao Sun ("Sun") [Dkt. # 51]; and Ambow Education Holding, Ltd. ("Ambow"), Sasha Chang ("Chang"), Paul Chow ("Chow"), and Jin Huang ("Huang") [Dkt. # 48], respectively (collectively, "Defendants"). The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. Having considered the moving and opposing papers, the Court GRANTS the Motions WITH LEAVE TO AMEND.

I.     <u>Background</u>

Ambow is a Cayman Islands corporation with its principal offices in Beijing in the People's Republic of China. *SCAC ¶* 82. Ambow sells educational and career enhancement services and products to students, recent graduates, and employees throughout the People's Republic of China. *Id*. Ambow has over 200 schools and tutoring centers, along with software and corporate training companies, located in nearly all of the autonomous regions within the People's Republic of China. *Id.*

On August 5, 2010, Ambow completed its initial public offering ("IPO") of American Depositary Shares ("ADS") on the New York Stock Exchange, selling over 10 million ADS at $10.00 per share. *Id. ¶* 3. Ambow's ADS were registered pursuant to an amended registration

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#48/61/51/52**

### CIVIL MINUTES - GENERAL

| Case No. | CV 12-5062 PSG (AJWx) | Date | February 6, 2014 |
|---|---|---|---|
| Title | Brown v. Ambow Education Holding Ltd., *et al.* | | |

statement ("Registration Statement") filed on July 20, 2010, and declared effective by the Securities and Exchange Commission ("SEC") on August 5, 2010. *Id. ¶* 5.

Defendant Huang signed Ambow's Registration Statement and has served as Ambow's President and Chief Executive Officer since 2000. *Id. ¶* 83. Defendant Chow served as Ambow's Chief Financial Officer from February 2010 until December 2011. *Id. ¶* 86. Defendant Phillips was chairman of Ambow's audit committee. *Id. ¶* 37. And Defendants Harris, Sun, and Chang were also members of Ambow's audit committee. *Id. ¶¶* 41, 91-93.

On June 11, 2012, Plaintiff Srikanth Gudimetla ("Gudimetla") filed a class action lawsuit against Ambow, Huang, and Chow, on behalf of all persons or entities that purchased Ambow's ADS between May 18, 2011 and May 16, 2012. *See* Dkt. # 1. The Complaint alleged that Defendants violated Section 10(b) and Section 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. §§ 78j(b) and 78t(a)) and Securities and Exchange Commission Rule 10b-5 (17 C.F.R. § 240.10b-5). *See Compl.* ¶ 10.

That same day, Gudimetla published a notice of pendency of the action over the national wire service *Business Wire* advising potential class members of the existence of the lawsuit and describing the claims asserted. *See* Dkt. # 18 at 2. On June 22, 2012, another plaintiff, Byron Brown ("Brown"), filed a class action complaint in the Central District of California with similar allegations against Defendants. *See* Dkt. # 1 [CV 12-5480 PSG].

On August 10, 2012, Plaintiff Tianqing Zhang ("Zhang") filed a motion to consolidate the related cases, to appoint Zhang as lead plaintiff, and to appoint Zhang's attorneys as lead counsel. *See* Dkt. # 6. The Court denied the motion due to Zhang's failure to comply with the Local Rules. *See* Dkt. # 10. When the motion was refiled, the Court granted the motion, appointing Zhang as lead plaintiff and appointing Zhang's counsel, the Rosen Law Firm, as lead counsel. *See* Dkt. # 18.

Plaintiffs then filed a Consolidated Amended Complaint ("CAC"), *see* Dkt. # 21, followed by the Second Consolidated Amended Complaint ("SCAC"), *see* Dkt. # 32. In the SCAC, Plaintiffs bring this case on behalf of all persons or entities that purchased Ambow's ADS between August 5, 2010 and February 27, 2013 (the "Class Period"). *SCAC* ¶ 1. Plaintiffs bring causes of action for violations of Section 10(b) of the Exchange Act and Rule 10b-5 against Ambow, Huang, and Chow, *see SCAC* ¶¶ 207-215; violation of Section 20(a) of the Exchange Act against Chow and Huang, *see SCAC* ¶¶ 216-222; violation of Section 11 of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#48/61/51/52**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5062 PSG (AJWx) | Date | February 6, 2014 |
| --- | --- | --- | --- |
| Title | Brown v. Ambow Education Holding Ltd., *et al.* | | |

Securities Act against all Defendants, *see SCAC* ¶¶ 223-234; and violation of Section 15 of the Securities Act against Huang and Chow, *see SCAC* ¶¶ 235-241. *See* Dkt. # 32.

In short, Plaintiffs allege that Ambow's SEC filings contained various material misrepresentations or omissions regarding Ambow's operations and financial results as stated in the Registration Statement, which caused the price of Ambow's ADS to be artificially inflated. *See id.* ¶¶ 6, 33, 74. The purported misrepresentations and omissions include three topical categories: (1) that Ambow never acquired Changsha Study School ("Changsha Tutoring"), an entity engaged in providing after-school tutoring services for junior and high school students in Changsha, China, *id.* ¶ 7; (2) that Ambow inflated its software sales figures by transferring tuition revenue and creating "fake" software sales contracts, *id.* ¶ 11; and (3) that Ambow artificially inflated its revenue figures as reported in the Registration Statement, *id.* ¶ 18.

With respect to the first category of misrepresentations, Plaintiffs contend that the Registration Statement falsely stated the Ambow acquired Changsha Tutoring on November 15, 2008. *Id.* ¶ 101. According to Plaintiffs, Ambow agreed with the owner of Changsha Tutoring "to borrow this school's name and revenue for the IPO," so that ownership and control of Changsha Tutoring never actually passed to Ambow in the purported acquisition. *Id.* ¶ 9. Plaintiffs further allege that the cash Ambow paid for "acquiring" Changsha Tutoring was returned to Ambow in the form of fake software sales over a three year period. *See, e.g., id.* ¶10. Plaintiffs base these allegations on a purported interview with an unidentified family member of Changsha Tutoring's owner, and on statements in four Internet articles published by Chinese media sources. *Id.*

As to the second topical category, Plaintiffs aver that Ambow improperly recorded tuition revenues from its "bricks and mortar" career education division as software sales revenue in order to "tout[] its fast growing, higher profit margin software business in an effort to increase its stock price relative to its earnings." *Id.* ¶ 11. As a result, Plaintiffs allege that Ambow was able to falsely report annual growth of software sales of over 300% in 2009, 74% in 2010, and 63% in 2011. *Id.* Plaintiffs' claim arises from a purported interview with an unidentified former Ambow employee who stated that all of the subsidiaries in Ambow's career education division agreed to convert all of their tuition revenues into software sales and to sign fake software contracts with Ambow. *Id.* ¶¶ 137-140.

Finally, with respect to the third category of misrepresentations raised in the SCAC, Plaintiffs allege that Ambow made sales in 2011 on a credit basis to various distributors that had no proven payment history, and then improperly recorded those sales as revenue without

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#48/61/51/52**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5062 PSG (AJWx) | Date | February 6, 2014 |
|---|---|---|---|

| Title | Brown v. Ambow Education Holding Ltd., *et al.* |
|---|---|

increasing its allowance for recovery in its accounts receivable. *Id.* ¶¶ 12, 18-19. Plaintiffs assert that this purported practice violated Generally Accepted Accounting Principles ("GAAP") and resulted in overstated revenues in Ambow's 2011 financial statements. *Id.* ¶¶ 12, 161.

Now before the Court are Defendants' Motions to Dismiss Plaintiffs' claims under Section 10(b), Section 20(a), and Rule 10b-5 of the Exchange Act, and Section 11 of the Securities Act, for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. # 48 ("Ambow Motion"); Dkt. # 51 ("Harris Motion").

II.   Legal Standard

A.   Rule 12(b)(6)

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a cause of action if the plaintiff fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). In evaluating the sufficiency of a complaint under Rule 12(b)(6), courts should be mindful that the Federal Rules of Civil Procedure generally require only that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required to survive a Rule 12(b)(6) motion to dismiss, a complaint that "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, the complaint must allege sufficient facts to support a plausible claim for relief. *See id.*

In evaluating a Rule 12(b)(6) motion, the court must engage in a two-step analysis. *See id.* at 679. First, the court must accept as true all non-conclusory, factual allegations made in the complaint. *See Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). Based upon these allegations, the court must draw all reasonable inferences in favor of the plaintiff. *See Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). Second, after accepting as true all non-conclusory allegations and drawing all reasonable inferences in favor of the plaintiff, the court must determine whether the complaint alleges a plausible claim for relief. *See Iqbal*, 556 U.S. at 679. Despite the liberal pleading standards of Rule 8, conclusory allegations will not save a complaint from dismissal. *See id.* at 678-79.

Through the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Congress imposed heightened pleading standards on federal securities fraud actions. *See* 15 U.S.C. §§

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#48/61/51/52**

### CIVIL MINUTES - GENERAL

| Case No. | CV 12-5062 PSG (AJWx) | Date | February 6, 2014 |
|---|---|---|---|
| Title | Brown v. Ambow Education Holding Ltd., *et al.* | | |

78u-4(b)(l)-(2).  "The PSLRA significantly altered pleading requirements in private securities fraud litigation by requiring that a complaint plead with particularity both falsity and scienter." *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1084 (9th Cir. 2002), *abrogation on other grounds recognized by South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008). "The purpose of this heightened pleading requirement was generally to eliminate abusive securities litigation and particularly to put an end to the practice of pleading 'fraud by hindsight.'"  *Id.* at 1084-85 (quoting *In re Silicon Graphics Sec. Inc. Litig.*, 183 F.3d 970, 973 (9th Cir. 1999)).  To meet the exacting standards of the PSRLA, a plaintiff's complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  *Id.* at 1085 (quoting 15 U.S.C. §§ 78u-4(b)(l)).

If a pleading fails to state a claim, the Court generally grants leave to amend, "unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citation omitted).  The Court considers the following factors in determining whether leave to amend is warranted in a particular case:  (1) a party's bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility, and (5) whether the plaintiff has previously amended his complaint.  *See Sisseton-Wahpeton Sioux Tribe of Lake Traverse Indian Reservation*, 90 F.3d 351, 355 (9th Cir. 1996).  When, as here, a plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, "[t]he district court's discretion to deny leave to amend is particularly broad."  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (internal quotations and citations omitted) (edit in original).

III.    Discussion

Defendants attack Plaintiffs' claims as stated in the SCAC upon various grounds; however, Defendants raise one attack common to all three of Plaintiffs' claims under Section 10(b) and Section 20(a) of the Exchange Act, and Section 11 of the Securities Act.  *See Ambow Mot.* 6:10-10:20 [Dkt. # 48]; *Harris Mot.* 17:22-20:11 [Dkt. # 51].  Namely, Defendants contend that the SCAC fails to adequately plead loss causation – an element germane to all three of Plaintiffs' causes of action.  *See id.*  Because the parties most cogently address loss causation in the context of Plaintiffs' Section 10(b) claim, the Court addresses this claim first.  The Court then addresses the Section 20(a) claim, followed by the Section 11 claim.

A.    Section 10(b) of the Exchange Act

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#48/61/51/52**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5062 PSG (AJWx) | Date | February 6, 2014 |
|---|---|---|---|
| Title | Brown v. Ambow Education Holding Ltd., *et al.* | | |

　　Section 10(b) of the Exchange Act forbids the "use or employ, in connection with the purchase or sale of any security . . .  [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors."  15 U.S.C. § 78j(b).  SEC Rule 10b-5 implements Section 10(b) of the Exchange Act by declaring it unlawful:

> (a) To employ any device, scheme, or artifice to defraud
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made  . . . not misleading, or
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5; *see also Nat'l Elevator Industry Pension Fund v. VeriFone Holdings, Inc.*, 704 F.3d 694, 703-04 (9th Cir. 2012).

　　In a typical Section 10(b) private action, a plaintiff must prove all of six elements:  (1) falsity, meaning a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.  *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005); *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (citing *In re Daou Sys. Inc.*, 411 F.3d 1006, 1014 (9th Cir. 2005)).

　　Defendants in the instant case argue that Plaintiffs have failed to adequately plead three of the six elements required for a Section 10(b) private action, *to wit*, falsity, fraudulent intent, and loss causation.  *See Ambow Mot.* 1:19-2:15 [Dkt. # 48].  As the failure to plead loss causation is dispositive, the Court addresses only this element of Plaintiffs' Section 10(b) claim.

### i.　Loss Causation

　　Defendants argue that Plaintiffs have failed to state a Section 10(b) claim because they have not adequately pleaded loss causation.  *See Ambow Mot.* 6:18-10:20 [Dkt. # 48].  To show loss causation, a plaintiff must allege, in the most general sense, that there is a "causal connection between the deceptive acts that form the basis for the claim or securities fraud and the injury suffered[.]"  *In re Daou Sys., Inc.*, 411 F.3d 1006, 1025 (9th Cir. 2005); *see also Dura Pharm., Inc.*, 544 U.S. at 346 ("[A] plaintiff [must] prove the defendant's misrepresentation (or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#48/61/51/52**

## CIVIL MINUTES - GENERAL

| Case No. | CV 12-5062 PSG (AJWx) | Date | February 6, 2014 |
|---|---|---|---|
| Title | Brown v. Ambow Education Holding Ltd., *et al.* | | |

other fraudulent conduct) proximately caused plaintiff's economic loss."). This specifically requires a plaintiff to state that the defendant's fraudulent practices were not only "revealed to the market" through a "corrective disclosure," but also that the corrective disclosure caused the resulting losses. *See Metzler Inv. GMBH*, 540 F.3d at 1062-64; *see also Weiss v. Amkor Tech., Inc.*, 527 F. Supp. 2d 938, 946 (D. Ariz. 2007) ("As numerous Courts have concluded, *Dura* indeed requires [p]laintiffs to plead loss causation by alleging that the stock price fell after the truth of a misrepresentation about the stocks was revealed."); *In re Merrill Lynch & Co. Research Reports & Sec. Litig.*, No. 02 Civ. 9690 (JFK), 2008 WL 2324111, at *5 (S.D.N.Y. June 4, 2008) (stating that a plaintiff may "successfully allege loss causation by . . . alleging that the market reacted negatively to a 'corrective disclosure,' which revealed an alleged misstatement's falsity or disclosed that allegedly material information had been omitted.") (internal citations omitted). Such a requirement ensures that the market actually learns of and reacts to the specific fraud alleged by the plaintiff, as opposed to reacting to reports of the defendant's poor financial health generally. *See, e.g.*, *In re Daou Sys., Inc.*, 411 F.3d at 1025-27.

The Ninth Circuit explained and applied the principle of loss causation in *Metzler*, where plaintiff alleged that defendant Corinthian Colleges violated Section 10(b) of the Exchange Act by artificially inflating its stock prices through two schemes: (1) manipulating student enrollment figures, which it then used to fraudulently obtain federal funding; and (2) by improperly recognizing federal funding as income in violation of GAAP. *See Metzler Inv. GMBH*, 540 F.3d at 1055-64. According to the *Metzler* plaintiff, two corrective disclosures revealed Corinthian's fraud to the market, causing the price of Corinthian's stock, including plaintiff's stock, to drop precipitously. *See id.* at 1059, 1063. The *Metzler* plaintiff claimed that the first corrective disclosure was a June 24, 2004 "Financial Times" article revealing a Department of Education investigation of enrollment irregularities at one of Corinthian's campuses. *See id.* And the *Metzler* plaintiff further claimed that the second disclosure was an August 2, 2004 company press release announcing reduced earnings and an adjusted revenue forecast. *See id.*

The Ninth Circuit found, however, that neither one of the public announcement "disclosed – or even suggested – to the market that Corinthian was manipulating student enrollment figures company-wide in order to procure excess federal funding, which is the fraudulent activity that [plaintiff] contend[ed] forced down the stock that caused its losses." *Id.* at 1063. In reaching this conclusion, the Ninth Circuit reasoned that plaintiff could not be allowed to plead loss causation through mere "euphemisms" and general disclosures, thereby avoiding alleging a clear nexus between the specific allegations of Corinthian's purported fraud

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#48/61/51/52**

## CIVIL MINUTES - GENERAL

| Case No. | CV 12-5062 PSG (AJWx) | Date | February 6, 2014 |
|---|---|---|---|
| Title | Brown v. Ambow Education Holding Ltd., *et al.* | | |

as stated in plaintiffs' complaint and the actual losses suffered by plaintiff. *See id.* at 1064. The Court explained that:

> So long as there is a drop in a stock's price, a plaintiff will always be able to contend that the market "understood" a defendant's statement precipitating a loss as a coded message revealing the fraud. Enabling a plaintiff to proceed on such a theory would effectively resurrect what *Dura* discredited – that loss causation is established through an allegation that a stock was purchased at an inflated price.

*Id.* Instead, the Ninth Circuit made clear that a plaintiff, in order to state a Section 10(b) claim under the Exchange Act, must allege that a defendant's fraudulent practices were "revealed to the market," causing the defendant's share price to fall significantly *after the truth became known*" to the market. *See id.* at 1062-63 (emphasis added). With these words, the Ninth Circuit affirmed the Rule 12(b)(6) dismissal of plaintiff's claim because the corrective disclosures at issue did not reveal Corinthian's alleged fraud to the market. *See id.* at 1062-65, 1072.

In this case, Plaintiffs point to the following corrective disclosures to argue that the alleged fraud was revealed to the market: (1) On April 30, 2012, Ambow filed a notice of late filing (Form 12b-25) and the next day filed a press release concerning the late filing, *SCAC ¶¶* 163, 165; (2) On May 16, 2012, Ambow filed an additional press release stating that it would need more time to file its 20-F because of a change in its revenue recognition method, *id.* ¶ 166; (3) On May 29, 2012, Ambow filed its 20-F with the SEC and issued a press release confirming the adjustments to its previously unaudited financial results for 2011, *id.* ¶ 168; (4) On July 5, 2012, Ambow announced that its Audit Committee would conduct an internal investigation to review allegations of financial impropriety in connection with Ambow's 2008 acquisition of a training school, *id.* ¶¶ 9, 26-27, 124; (5) On July 9, 2012 and July 10, 2012, Jeffries and Macquarie, respectively reduced their ratings on Ambow stock as a result of the July 5, 2012 investigation, *id.* ¶¶ 30-31; (6) On February 27, 2013, *Bloomberg* published an article detailing the allegations of Plaintiffs' First Consolidated Amended Complaint, *id.* ¶ 34; and (7) On March 22, 2013, Ambow's independent auditor, PriceWaterhouse Coopers ("PWC") resigned, *id.* ¶ 52. The Court evaluates each "corrective disclosure" identified by Plaintiffs in turn, and finds none of them revealed or exposed the alleged fraud to the market as required under Ninth Circuit law. *See Metzler Inv. GMBH*, 540 F.3d at 1055-64.

> a.   *April 2012 Announcements*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#48/61/51/52**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5062 PSG (AJWx) | Date | February 6, 2014 |
|---|---|---|---|
| Title | Brown v. Ambow Education Holding Ltd., *et al.* | | |

Plaintiffs first point to a series of announcements beginning in April 2012, which they purport revealed the alleged fraud "bit-by-bit." *SCAC* ¶ 162. In particular, Plaintiffs cite to Ambow's April 30, 2012 Form 12b-25 that was filed with the SEC and the accompanying press release. *See id.* ¶¶ 163-65.

Neither of these announcements, however, revealed to the market any misrepresentations in Ambow's SEC filings concerning the three categories of alleged misstatements that Plaintiffs rely on in the SCAC. *See Metzler Inv. GMBH*, 540 F.3d at 1063 ("[T]he Complaint must allege that the practices that the *plaintiff contends are fraudulent* were revealed to the market and caused the resulting losses.") (emphasis added). The notification of late filing states only that Ambow was unable to file its 20-F on time because the "review of the information required to be in the annual report has not been finalized and will not be complete before the filing deadline." *Id.* ¶ 163; *see also Hibbard Decl.*, Ex. H at 81-83. Similarly, the accompanying press release gives no reasons for Defendants' filing delay. *Id.* ¶ 165; *see also Hibbard Decl.*, Ex. I at 85("The Company expects to be able to file by May 15, 2012, which is within the additional time allowed by the Form 12b-25.").

So while these announcements may have had a negative effect on Ambow stock, they did not have a corrective effect on any prior misrepresentation included in the three categories of misstatements delineated *supra*. *See In re Initial Public Offering Sec. Litig.*, 399 F. Supp. 2d 261, 266 (S.D.N.Y. 2005) (explaining the distinction between "negative" and "corrective" disclosures). Moreover, because Plaintiffs do not allege that the press release caused a drop in Ambow's ADS price, it cannot serve as a corrective disclosure for this reason as well. *See In re Omnicom*, 541 F. Supp. 2d 546, 551 (S.D.N.Y. 2008), *aff'd* 597 F.3d 501 (2d Cir. 2010) (noting that plaintiff must show that market reacted negatively to disclosure). Ergo, neither one of the April 2012 statements constitute a corrective disclosure for purposes of pleading loss causation under Section 10(b).

### b. May 2012 Announcements

Similarly, the May 16, 2012 press release stating that Ambow would need additional time to file its 20-F form does not constitute a corrective disclosure. *See SCAC* ¶ 166; *see also Hibbard Decl.*, Ex. J at 88-90. The announcement details that Ambow needed more time to file the 20-F form because in the process of conducting its own audit, Ambow identified preliminary adjustments to its previously unaudited financial statements for 2011. *See id.* The press release explains that adjustments to the unaudited 2011 figures were the result of a "change [to] the revenue recognition method in respect of sales of the Company's educational services and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#48/61/51/52**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5062 PSG (AJWx) | Date | February 6, 2014 |
|---|---|---|---|
| Title | Brown v. Ambow Education Holding Ltd., *et al.* | | |

software products to certain distributors."  *See id.*; *see also SCAC* ¶ 166.  The announcement also revealed that Ambow expected to make a bad debt provision of between $2.1 and $2.4 million, that Ambow was evaluating whether it would take a one-time non-cash charge of between $1.6 and $3.2 million associated with a 2011 acquisition, and that Ambow was considering whether it was necessary to book an additional tax provision between $3.2 and $4.8 million related to one of its subsidiaries.  *See Hibbard Decl.*, Ex. J-88-89.  Additionally, on May 29, 2012, Ambow filed its 20-F with the SEC and issued a press release confirming the adjustments to its previously unaudited financial results for 2011.  *See SCAC* ¶ 168; *Hibbard Decl.*, Ex. K, Ex. L at 265-272.

While the Court accepts that the price per share of Ambow's stock fell by approximately 17% following these announcements, the Court does not accept these announcements as corrective disclosures, for none of the statements correct any prior misrepresentations made by Defendants.  Although Plaintiffs allege that the decision to reverse revenues shows that previously issued financial results were false when made, Plaintiffs do not allege any facts to support this theory. Indeed, the May 16, 2012 announcement itself emphasizes the prospective nature of Ambow's decision to change its revenue recognition method, rather than any post-hoc claim that its method was flawed from the beginning.  *See SCAC* ¶ 166 ("The Company will change the revenue recognition method in respect of sales of the Company's educational services and software products[.]").

Furthermore, unlike the cases cited by Plaintiffs, *see Opp.* 14:6-15 [Dkt. # 55], Ambow's announcement that it would change its revenue recognition method was not accompanied by an admission of an accounting error, which would have come closer to revealing a material misrepresentation or omission to the market.  *Cf. In re Sipex Corp. Sec. Litig.*, No. C 05-00392 WHA, 2005 WL 3096178, at *1 (N.D. Cal. Nov. 17, 2005) ("The company's Form 8-K . . . conceded that it had *improperly recognized revenue sales* in which price protection, stock rotation, and/or return rights and other concessions were granted during the period in question.") (emphasis added); *In re DRDGOLD Ltd., Sec. Litig.*, 472 F. Supp. 2d 562, 566 (S.D.N.Y. 2007) ("The restatement acknowledged certain *mistakes* in DRD's accounting.") (emphasis added); *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 485-86 (S.D.N.Y. 2004) (attributing registration statement to improper accounting of "obsolete inventory, maintenance expenses, bad debt, and impairment to its long-lived assets and that the issuance of the company's false financial results can be attributed to each individual defendant").

In a similar case where the company did *not* acknowledge mistakes in its accounting practices, *In re Ramp Networks, Inc. Securities Litig.*, 201 F. Supp. 2d 1051, 1065-66 (N.D. Cal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#48/61/51/52**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5062 PSG (AJWx) | Date | February 6, 2014 |
|---|---|---|---|
| Title | Brown v. Ambow Education Holding Ltd., *et al.* | | |

2002), the plaintiffs made the same erroneous argument as Plaintiffs do here. The defendant company "explained that it had decided to abandon its previous accounting practice of recognizing revenue at the time products were shipped in favor of a policy under which revenue would not be recognized until it was 'sold through' to customers." *Id.* at 1058. The plaintiffs argued that the restatement of the previously issued results amounted to an admission that the company had improperly recognized revenues for the three prior quarters, and that the financial results reported for those periods were "false at the time they were made." *Id.* at 1064. The court dismissed this argument, however, explaining that "[b]ecause the restatements were not explicit admissions of falsity by Defendants, the restatements do not by themselves satisfy the requirement that [p]laintiffs plead specific facts showing the statements at issue were false when made." *Id.* at 1065.

Here, too, because Ambow's never expressly nor implicitly revealed the alleged impropriety of its accounting practices to the market, the fact that Ambow decided to change its revenue recognition practices and adjust its prior revenue statement does not show that earlier statements regarding revenue were false. *See also In re Initial Public Offering Sec. Litig.*, 399 F. Supp. 2d at 266 ("The fact that an event . . . disabused the market of [its belief that the securities were valuable] does not mean that the event disclosed the alleged scheme to the market."). Without a revelation of some wrongdoing to the market, an ensuing decline in stock price cannot be attributed to the alleged fraud. *See In re Ramp Networks, Inc. Securities Litig.*, 201 F. Supp. 2d at 1065-66; *see also Metzler Inv. GMHB*, 540 F.3d at 1063 ("[T]he complaint must allege that the *practices that the plaintiff contends* are fraudulent were *revealed to the market* and caused the resulting losses.") (emphasis added). Loss causation is therefore absent as a matter of law. Indeed, any other conclusion would convert the security laws into nothing more than an insurance policy for investors, allowing investors to recuperate losses in the stock market without ever claiming that the fraudulent scheme was disclosed to the market and thus caused those losses.

### c.     July 2012 Announcement

In Ambow's July 5, 2012 announcement, Ambow disclosed that "a former employee of [Ambow] made allegations of financial impropriety and wrongful conduct in connection with the Company's acquisition of a training school in 2008." *SCAC* ¶¶ 26-27. Plaintiffs' Opposition describes the announcement as the "most clear and direct" corrective disclosure out of all of Ambow's disclosures. *See Opp.* 22:2-7 [Dkt. # 55]. Yet this announcement does not constitute a corrective disclosure sufficient to demonstrate loss causation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#48/61/51/52**

## CIVIL MINUTES - GENERAL

| Case No. | CV 12-5062 PSG (AJWx) | Date | February 6, 2014 |
|---|---|---|---|
| Title | Brown v. Ambow Education Holding Ltd., *et al.* | | |

First, while the announcement refers to a "training school," it does not, as Plaintiffs posit, "clearly" refer to the Changsha Tutoring acquisition – one of the predicates of Defendants' purported fraud. *See id.* Instead, Ambow's SEC filings show that it acquired at least nine new training schools in 2008, any of which could have been referenced as the "training school" in the July 5, 2012 announcement. *See Supp. Pao Decl.*, Ex. A at 5. This all the more true given Plaintiffs' own admission that Ambow acquired "many" other training "schools" in addition to the Changsha Tutoring acquisition. *See SCAC* ¶¶ 116, 121. As a result, there was no good reason for the market to conclude that the announcement specifically related to Ambow's acquisition of Changsha Tutoring, as opposed to any other of the "many" schools. *Cf. In re Omnicom Grp., Inc. Sec. Litig.*, 541 F. Supp. 2d 546, 551 (S.D.N.Y. 2008) ("While a disclosure need not reflect every detail of an alleged fraud, it must reveal *some* aspect of it.") (emphasis added).

Second, the July 2005 announcement refers only to "allegations of financial impropriety and wrongful conduct" surrounding the acquisition. *See SCAC* ¶ 26; *see also Hibbard Decl.*, Ex. N at 279. The mere allegation of potential financial impropriety, however, is insufficient for purposes of pleading loss causation. *See Metzler Inv. HBMG*, 540 F.3d at 1064 ("[Neither] *Daou* nor *Dura* support the notion that loss causation is pled where a defendant's disclosure reveals a 'risk' or 'potential' for widespread fraudulent conduct."); *In re Maxim Integrated Prods., Inc. Sec. Litig.*, 639 F. Supp. 2d 1038, 1046-47 (N.D. Cal. 2009) ("[T]he analyst reports identified by Plaintiffs here indicate only a 'risk for potential earnings restatement,' that [defendant] 'may have engaged in aggressive practices' . . . [s]uch speculative statements are insufficient under Ninth Circuit law.").

Third, the statements regarding Ambow's internal investigation also do not amount to corrective disclosures for purposes of pleading a Section 10(b) claim because "[t]he announcement of an investigation reveals just that – an investigation – and nothing more." *Meyer v. Greene*, 710 F.3d 1189, 1201 (11th Cir. 2013) (collecting cases holding that the announcement of an SEC investigation is generally insufficient to constitute a corrective disclosure); *Rudolph v. UTStarcom*, 560 F. Supp. 2d 880, 888 (N.D. Cal. 2008) ("[T[he announcement of an internal investigation cannot support an allegation of loss causation."); *see also In re Maxim Integrated Prods., Inc. Secs. Litig.*, 639 F. Supp. 2d 1038, 1047 (N.D. Cal. 2009) (finding that disclosures regarding compliance with an SEC investigation, subpoenas from the United States Attorneys' Office, and the formation of a Special Committee to investigate options granting practices did not indicate anything more than a "risk or potential that [d]efendants engaged in widespread fraudulent conduct" and thus could not be considered corrective disclosures for the purpose of pleading loss causation).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#48/61/51/52**

### CIVIL MINUTES - GENERAL

| Case No. | CV 12-5062 PSG (AJWx) | Date | February 6, 2014 |
|---|---|---|---|
| Title | Brown v. Ambow Education Holding Ltd., *et al.* | | |

Although Plaintiffs attempt to carefully sidestep these issues by arguing that the investigation "related to" the Changsha Tutoring acquisition, *see Opp.* 22:11-14 [Dkt. # 55], Plaintiffs' argument does not hold water.  Because the purported disclosure regarding the Changsha Tutoring acquisition does not actually constitute a corrective disclosure, the identification that an investigation will take place is similarly not a corrective disclosure.  Therefore, the announcement that Plaintiffs rely on as the "most clear and direct" corrective disclosure is in fact not a corrective disclosure at all.  *Cf. Opp.* 22:2-3.

#### d.     *Jefferies and Macquarie Ratings*

As to the Jefferies and Macquarie ratings reductions, *see Hibbard Decl.*, Ex. G at 68-79, even assuming *arguendo* that the reports based their ratings on the July 5, 2012 announcement of Ambow's internal investigation, these do not constitute corrective disclosures because that announcement did not reveal any material misrepresentations or omissions.  *See In re Maxim Integrated Prods., Inc. Sec. Litig.*, 639 F. Supp. 2d at 1046-47 (recognizing that analyst reports indicating potential risk are too speculative and thus "insufficient under Ninth Circuit law").  Further, Plaintiffs not only fail to allege any connection between the Macquarie report and Ambow's prior public statements, *see SCAC* ¶ 31, but they also fail to allege that the Jefferies report caused a drop in Ambow's ADS price for purposes of loss causation under Section 10(b), *see id.* ¶ 30.  Notwithstanding these deficiencies, Plaintiffs' Opposition says nothing to the contrary.  *See Opp.* 21:14-24:5 [Dkt. # 55].

#### e.     *Bloomberg Article & Plaintiffs' Complaint*

To the extent Plaintiffs argue that a *Bloomberg* article discussing the allegations of Plaintiffs' own complaint serves as a corrective disclosure, *see SCAC* ¶ 34, Plaintiffs present no persuasive argument or authority to support such a newfangled proposition of law.  *See Opp.* 21:14-24:5 [Dkt. # 55]; *see also In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261, 270-71 (3d Cir. 2005) (finding that the Wall Street Journal's reporting of previously available information is not a corrective disclosure); *In re Omnicom*, 541 F. Supp. 2d at 552.

Moreover, the Court agrees with Defendants that permitting a plaintiff to establish loss causation by filing a complaint would effectively eviscerate the loss causation requirement as a necessary precondition to the filing of a securities fraud lawsuit.  *See Ambow Mot.* 10:6-20 [Dkt. # 48]; *Harris Reply* 10:1-8 [Dkt. # 63].  In *Dura Pharmaceuticals,* the Supreme Court cited a series of sources discussing the common law requirement that a plaintiff in an action based upon

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#48/61/51/52**

### CIVIL MINUTES - GENERAL

| Case No. | CV 12-5062 PSG (AJWx) | Date | February 6, 2014 |
|---|---|---|---|
| Title | Brown v. Ambow Education Holding Ltd., *et al.* | | |

fraudulent misrepresentation suffer economic loss before filing a complaint. *See Dura Pharmaceuticals*, 544 U.S. at 344 (citing M. Bigelow, Law of Torts 101 (8th ed.1907) (damage "must already have been suffered before the beginning of the suit")). Therefore, permitting Plaintiffs to show damages by pointing to damages they manufactured *after* bringing suit would be improper under *Dura Pharmaceuticals*, as the entire loss causation criterion would be effectively rendered superfluous. *Cf. Healthcare Finance Group, Inc. v. Bank Leumi USA*, 669 F. Supp. 2d 344, 350 (S.D.N.Y. 2009) ("In addition, the Amended Complaint fails to allege loss causation, and HFG could remedy this deficiency only by alleging a completely different set of misrepresentations and omissions. Such allegations would effectively constitute filing an entirely new action[.]").

While some courts have recognized that *Dura Pharmaceuticals* "prohibits the filing of a complaint without *any* allegation of loss and loss causation . . . it does not bar the filing of an amended complaint alleging a greater loss for which loss causation can also be pled." *In re Mercury Interactive Corp. Sec. Litig.*, No. C 05-3395 JF (PVT), 2007 WL 2209278, at *9 (N.D. Cal. July 30, 2007). Thus, if Plaintiffs were able to show that they suffered damages at the time of the filing of the original complaint, the *Bloomberg* article could potentially serve as an *additional* corrective disclosure. *See id.* However, Plaintiffs cannot show loss causation based on the *Bloomberg* article alone.

### f.      March 2013 Announcement

Finally, Plaintiffs point to the March 22, 2013 announcement of the resignation of Ambow's auditor, PriceWaterhouse Coopers, LLC ("PWC"), to demonstrate loss causation. *See Opp.* 23:7-17 [Dkt. # 55]. In this announcement, PWC stated that it was resigning due to its concerns that the investigation into allegations of Ambow's financial impropriety may not be given necessary resources. *See SCAC* ¶ 53, Ex. 6. PWC also stated in the announcement that while it "had not reached any conclusions in connection with the Investigation," this did not foreclose the possibility that Ambow's previously issued financial statements were misleading. *See id.* ¶ 54, Ex. 6.

Based on these statements, Plaintiffs contend that the March 22, 2013 announcement was "clearly a corrective disclosure of misrepresentations alleged in the Complaint." *See Opp.* 23:10-13 [Dkt. # 55]. The Court, however, disagrees. The announcement is not a corrective disclosure for two reasons.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#48/61/51/52**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5062 PSG (AJWx) | Date | February 6, 2014 |
|---|---|---|---|
| Title | Brown v. Ambow Education Holding Ltd., *et al.* | | |

First and foremost, the announcement does not specifically disclose any misrepresentation or omission to the public.  *See generally SCAC*, Ex. 6.  Instead, the announcement declares that while it remained possible that Ambow's previously issued financial statements were misleading, PWC had ultimately *not* made any conclusions as to Ambow's financial propriety. *See id.*  Speculative statements like this do not reasonably suggest that Defendants' fraud was revealed to the market.  *See Metzler Inv. GMBH*, 540 F.3d at 1063; *see also Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*, 633 F. Supp. 2d 763, 820 (D. Ariz. 2009) ("The Report itself expressly 'reiterated[d][,]' not once but twice 'that it is *impossible* to tell *definitively* if a company has backdated options from the disclosure in its SEC findings. . . . None of these speculative observations, even had they all been included in the FAC, comport with the loss causation pleading requirements of *Dura* as recently elucidated by the Ninth Circuit."); *cf. In re Diamond Foods, Inc. Sec. Litig.*, No. C 11–05386 WHA, 2012 WL 6000923, at *16 (N.D. Cal. Nov. 30, 2012) (finding loss causation adequately alleged where plaintiff claimed fraud had occurred via improper accounting for walnut payments in violation of GAAP and auditor's investigation disclosed to the public that walnut payments were not accounted for in the correct periods).

Moreover, even if the Court generously construed PWC's statements to stand for a disclosure of Ambow's financial impropriety, Plaintiffs still fail to allege the requisite causal nexus between the disclosure of a *particular* misrepresentation and the loss.  In other words, PWC's statements regarding Ambow's general financial impropriety do not coincide with any of the categories of misrepresentations that Plaintiffs expressly rely on in the SCAC.  *See Metzler Inv. GMHB*, 540 F.3d at 1063 ("[T]he complaint must allege that the *practices that the plaintiff contends are fraudulent* were revealed to the market and caused the resulting losses.") (emphasis added).  Thus, because the March 22, 2013 announcement not only fails to disclose a misrepresentation, but ultimately fails to disclose one of the three categories of misrepresentations that Plaintiffs stake their Section 10(b) claim on, the Court refuses to deem the announcement a corrective disclosure for purposes of establishing loss causation under the Exchange Act.

> g.      *Conclusion*

Finally, the Court notes that while a corrective disclosure need not fully disclose every single fact relied upon by Plaintiffs in the SCAC, *see Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 230-31 (5th Cir. 2009) (per curiam), none of the alleged disclosures in the instant case reveal *any* of the facts relied upon by Plaintiffs in the SCAC.  Furthermore, to the extent Plaintiffs contend that partial disclosures led to the market's awareness of the alleged

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#48/61/51/52**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5062 PSG (AJWx) | Date | February 6, 2014 |
|---|---|---|---|
| Title | Brown v. Ambow Education Holding Ltd., *et al.* | | |

financial impropriety involving Changsha Tutoring and accompanying investigation of financial impropriety, as well as fraudulent accounting practices, the Court finds that the failure of the disclosures to correct a prior misrepresentation or omission precludes such a finding:

> So long as there is a drop in a stock's price, a plaintiff will always be able to contend that the market "understood" a ... statement precipitating a loss as a coded message revealing fraud. Enabling a plaintiff to proceed on such a theory would effectively resurrect what *Dura* discredited—that loss causation is established through an allegation that a stock was purchased at an inflated price. Loss causation requires more.

*Metzler*, 540 F.3d at 1064 (internal citation omitted). In short, "sentiment simply is not enough to sufficiently plead loss causation." *Katyle v. Penn National Gaming Inc.*, 637 F.3d 4762, 477 (4th Cir. 2011). For this reason, and all of the additional reasons discussed *supra*, Plaintiffs have failed to plead loss causation, and so fail to state a claim under Section 10(b) of the Exchange Act. The Court thus DISMISSES Plaintiffs' Section 10(b) claim WITH LEAVE TO AMEND.

    B.    <u>Section 20(a) of the Exchange Act</u>

Section 20(a) of the Exchange Act confers liability on those who direct others to commit violations of the Exchange Act:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a). In order to allege a violation of § 20(a), a plaintiff must establish (1) a primary violation of federal securities laws; and (2) that the defendant exercised actual power or control over the primary violator. *Howard v. Everex Systems, Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000). Thus, where a complaint does not plead a primary violation of Section 10(b), the control person claim under Section 20(a) "may be dismissed summarily." *Zucco*, 552 F.3d at 990. Because Plaintiffs have failed to allege a Section 10(b) claim, the Court DISMISSES the Section 20(a) claim WITH LEAVE TO AMEND.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#48/61/51/52**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5062 PSG (AJWx) | Date | February 6, 2014 |
|---|---|---|---|
| Title | Brown v. Ambow Education Holding Ltd., *et al.* | | |

C.      Section 11 of the Securities Act

Section 11 of the Securities Act provides a private right of action for purchasers of a security if the issuer publishes a registration statement in connection with that security that "contain[s] an untrue statement of a material fact or omit[s] to state a material fact required to be stated therein or necessary to make the statements therein not misleading."  15 U.S.C. § 77k(a). To prevail on a Section 11 claim, a plaintiff must show "(1) that the registration statement contained an omission or misrepresentation, and (2) that the omission or misrepresentation was material, that is, it would have misled a reasonable investor about the nature of his or her investment." *In re Daou Sys., Inc.,* 411 F.3d at 1027; *see also Rubke v. Capitol Bancorp Ltd,* 551 F.3d 1156, 1161 (9th Cir. 2009).  Unlike a Section 10(b) claim, scienter is not required to state a claim under Section 11 of the Securities Act; rather, "defendants will be liable for innocent or negligent material misstatements or omissions."  *See In re Daou Sys. Inc.*, 397 F.3d at 722-23; *accord Kaplan v. Rose*, 49 F.3d 1363, 1371 n. 9 (9th Cir. 1994).

An omission is considered "material" if there is "a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of a reasonable shareholder." *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1259 (N.D. Cal. 2000).  Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.  *Id.*  Although a court may dismiss a claim on the ground that a misstatement or omission was not material, the standard for doing so is high.  *In re Sterling Foster & Co., Inc., Sec. Litig.*, 222 F. Supp. 2d 216, 262 (E.D.N.Y. 2002).  In fact, "a complaint may not properly be dismissed pursuant to Rule 12(b)(6) . . . on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance."  *Id.* at 262-63 (internal citations omitted).

Moreover, where the adequacy of the disclosures is at issue, a defendant must make a "stringent showing" that "reasonable minds could not disagree" that the disclosures were not misleading.  *See Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 947 (9th Cir. 2005) (dismissal on the pleadings based on sufficient cautionary language "requires a stringent showing:  There must be sufficient 'cautionary language or risk disclosure [such] that reasonable minds could not disagree that the challenged statements were not misleading.'").

Defendants here advance three grounds for dismissal of Plaintiffs' Section 11 claim. Defendants first argue that Plaintiffs do not have standing to pursue their Section 11 claim. *See*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#48/61/51/52**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5062 PSG (AJWx) | Date | February 6, 2014 |
|---|---|---|---|
| Title | Brown v. Ambow Education Holding Ltd., *et al.* | | |

*Harris Mot.* 2:15-21 [Dkt. # 51]. Defendants next contend that Plaintiffs have failed to state a Section 11 claim under Rule 12(b)(6) because the Registration Statement did not include any misleading statements or omissions. *See id.* 2:22-3:17. And Defendants finally offer a negative causation defense as an additional, and ultimately dispositive, ground for dismissal. *See id.* 3:18-23. Because the Court finds Defendants' negative causation defense dispositive, the Court addresses this issue alone, and leaves Defendants' remaining arguments for another day.

> i. *Negative Causation*

Building off of Defendants' rebuttal to Plaintiffs' Section 10(b) claim, Defendants aver that Plaintiffs' Section 11 claim must similarly fall because Plaintiffs cannot establish that the alleged misstatements in the Registration Statement caused their losses. *See Harris Mot.* 17: 22-20:11 [Dkt. # 51]; *Reply* 8:16-10:8 [Dkt. # 63]. Although loss causation is not an element of a Section 11 cause of action, defendants are nevertheless afforded an affirmative defense to avoid liability if they can show that, on the face of the complaint, the absence of loss causation is apparent. *See, e.g.*, *In re Countrywide Sec. Litig.*, 588 F. Supp. 2d. 1132, 1170-171 (C.D. Cal. 2008); *see also In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 346 n.39 (S.D.N.Y. 2005) (loss causation in Section 11 is the "mirror image" of the plaintiffs' burden on loss causation in Section 10(b)). While the loss causation analysis is fact intensive and often more appropriate at the summary judgment phase, courts in the Ninth Circuit routinely apply Rule 12(b)(6) when the face of the complaint demonstrates that the plaintiff cannot establish loss causation. *See, e.g.*, *In re Shoretel Inc., Sec. Litig.*, No. C 08-00271 CRB, 2009 WL 248326, at *4-6 (N.D. Cal. Feb. 2, 2009).

Defendants claim that they have met their burden of proving negative causation (lack of loss causation) as a matter of law because negative causation is apparent from the face of the SCAC. *See Harris Mot.* 18:21-20:11 [Dkt. # 51]. Plaintiffs respond that loss causation arguments at the motion to dismiss stage are premature. *See Opp.* 21:8-10 [Dkt. # 56]. Plaintiffs are incorrect. As is the case with any affirmative defense, if the facts as alleged by Plaintiffs, and documents which the court may take judicial notice of, establish the affirmative defense as a matter of law, then the motion to dismiss may be granted. *See McCalden v. California Library Ass'n,* 955 F.2d 1214, 1219 (9th Cir. 1990) (noting that a complaint may be dismissed because the allegations give rise to an affirmative defense if the defense clearly appears on the face of the pleading); *see also In re Global Crossing, Ltd. Sec. Litig.*, 471 F. Supp. 2d 338, 347-48 (S.D.N.Y. 2006) ("[L]ack of loss causation is an affirmative defense to a claim under Section 11 and Section 15 (but can be considered on a motion to dismiss to the extent that it is claimed that lack of causation is apparent on the face of the complaint).").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#48/61/51/52**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5062 PSG (AJWx) | Date | February 6, 2014 |
|---|---|---|---|
| Title | Brown v. Ambow Education Holding Ltd., *et al.* | | |

As detailed *supra* in the analysis of Plaintiffs' Section 10(b) claim, Plaintiffs affirmatively allege that the putative class was damaged by the decline in stock prices caused by the following, and only the following, corrective disclosures:  (1) On April 30, 2012, Ambow filed a notice of late filing (Form 12b-25) and the next day filed a press release concerning the late filing, *SCAC* ¶¶ 163, 165; (2) On May 16, 2012, Ambow filed an additional press release stating that it would need more time to file its 20-F because of a change in its revenue recognition method, *id.* ¶ 166; (3) On May 29, 2012, Ambow filed its 20-F with the SEC and issued a press release confirming the adjustments to its previously unaudited financial results for 2011, *id.* ¶ 168; (4) On July 5, 2012, Ambow announced that its Audit Committee would conduct an internal investigation to review allegations of financial impropriety in connection with Ambow's 2008 acquisition of a training school, *id.* ¶¶ 9, 26-27, 124; (5) On July 9, 2012 and July 10, 2012, Jeffries and Macquarie, respectively reduced their ratings on Ambow stock as a result of the July 5, 2012 investigation, *id.* ¶¶ 30-31; (6) On February 27, 2013, *Bloomberg* published an article detailing the allegations of Plaintiffs' First Amended Complaint, *id.* ¶ 34; and (7) On March 22, 2013, Ambow's independent auditor, PriceWaterhouse Coopers ("PWC") resigned, *id.* ¶ 52.

Nevertheless, as the Court explained *supra*, these announcements do not reasonably reveal anything about the purported misrepresentations alleged in the SCAC, so they are not corrective disclosures for purposes of demonstrating loss causation.  None of the disclosures mention the acquisition of Changsha Tutoring.  None of the disclosures mention the purported "round tripping" of cash through "fake" software contracts.  And none of the disclosures mention the alleged recording of tuition revenue as software revenue. *E.g.*, *Weiss v. Amkor Tech., Inc.*, 527 F. Supp. 2d 938, 946-47 (D. Ariz. 20007) (granting dismissal where plaintiffs "failed to link their losses to the alleged misrepresentations by showing that the . . . stock price dropped upon revelation of the true state of facts").  Plaintiffs' second-round attempt therefore fares no better than their first failed attempt. *See Opp.* 22:10-23:12 [Dkt. # 56]; *see also In re WorldCom, Inc. Sec. Litig.*, 02 Civ. 3288 (DLC) 2005 U.S. Dist. LEXIS 2216, at *20 (S.D.N.Y. Feb. 17, 2005) (stating that "negative causation defense in Section 11 and loss causation in Section 10(b) are mirror images").[1]

---

[1] Although the Supreme Court in *Dura Pharmaceuticals* reviewed loss causation in the context of Section 10(b) claims, courts use its reasoning to analyze loss causation in Section 11 claims as well. *See Schuler v. NIVS Intellimedia Tech. Group, Inc.*, No. 11 Civ. 2484 (KMW) (FM), 2013 U.S. Dist. LEXIS 34200, at *30-31 n.8 (S.D.N.Y. Mar. 12, 2013) (collecting cases).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#48/61/51/52**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5062 PSG (AJWx) | Date | February 6, 2014 |
|---|---|---|---|

| Title | Brown v. Ambow Education Holding Ltd., *et al.* |
|---|---|

Thus, because these alleged corrective disclosures do not reasonably evidence the alleged misstatements or misleading omissions identified in the Registration Statement, and Plaintiffs' SCAC points to no additional indications of loss causation, the face of the SCAC demonstrates negative causation. *See In re Shoretel, Inc. Securities Litig.*, No. C 08-00271 CRB, 2009 WL 248326, at *4-6 (N.D. Cal. Feb. 2, 2009) (granting a motion to dismiss under Rule 12(b)(6) where all of the disclosures identified in the pleadings failed to demonstrate loss causation, thereby establishing defendants' negative causation defense under Section 11); *see also In re Alamosa Holdings, Inc.*, 382 F. Supp. 2d 832, 865-66 (N.D. Tex. 2005) (dismissing Section 11 claim on a 12(b)(6) motion on the ground that plaintiffs' allegations established that their loss was not caused by the alleged misrepresentations in the Registration Statement); *In re McKesson HBOC, Inc.*, 126 F. Supp. 2d 1248, 1262 (N.D. Cal. 2000) (granting rule 12(b)(6) motion to dismiss Section 11 claim because "the complaint reveals that the Section 11 defendants have an absolute 'negative causation' defense").

Accordingly, by alleging that their losses occurred as a result of only these announcements, which do not reasonably disclose any of the misrepresentations alleged in the SCAC, Plaintiffs have shown only that the market reacted to the announcement of potential financial impropriety, rather than to a disclosure of the Registration Statement's allegedly false and misleading representations. The Court therefore GRANTS Defendants' Motion to Dismiss Plaintiffs' Section 11 claim with LEAVE TO AMEND.[2]

IV.     Conclusion

Thus, based on the foregoing, Defendants' Motions to Dismiss are GRANTED. Plaintiffs' claims for violation of Section 10(b), Section 20(a), Section 11, and Section 15 are all DISMISSED WITH LEAVE TO AMEND.  Plaintiffs may submit an amended pleading no later than **March 17, 2014**.  Failure to do so will result in the action being dismissed with prejudice.

---

[2]  Plaintiffs' SCAC also asserts a claim under Section 15 of the Securities Act.  *See SCAC* ¶¶ 235-241.  Section 15 of the Securities Act establishes control person liability for "every person who, by or through stock ownership, agency, or otherwise . . . controls any person liable under section[ ] 77k."  15 U.S.C. § 77o.  In order to establish liability under Section 15, Plaintiffs must show a primary violation of Section 11 and control of the primary violator by Defendants. *See, e.g.*, *In re Countrywide Financial Corp Mortgage-Backed Sec. Litig.*, 932 F. Supp. 2d 1095, 1104 (C.D. Cal. 2013).  Therefore, because Plaintiffs fail to adequately plead a Section 11 claim, they also fail to plead a Section 15 claim as well.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#48/61/51/52**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5062 PSG (AJWx) | Date | February 6, 2014 |
|---|---|---|---|
| Title | Brown v. Ambow Education Holding Ltd., *et al.* | | |

**IT IS SO ORDERED.**