UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5062 PSG (AJWx) | Date | March 16, 2015 |
|---|---|---|---|
| Title | Srikanth Gudimetla, *et al.* v. Ambow Education Holding, *et al.* | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy Hernandez | | Not Reported |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiff(s): | | Attorneys Present for Defendant(s): |
| Not Present | | Not Present |

**Proceedings (In Chambers):**   Order GRANTING Plaintiffs' motions for final approval of class settlement, attorneys' fees and costs, and incentive awards.

Before the Court are Lead Plaintiffs' motions for final approval of class settlement, attorneys' fees and costs, and incentive awards. Dkts. # 102, 103. Pursuant to the Court's December 2, 2014 Order granting preliminary approval of the class settlement ("Preliminary Approval Order"), the parties have filed additional memoranda discussing the settlement agreement. Dkts. # 93, 106-108. The Court held a fairness hearing on March 16, 2015. Having considered the arguments in all of the submissions, as well as those raised at the March 16, 2015 fairness hearing, the Court GRANTS Plaintiffs' motions.

I.   Background

Ambow Education Holding LTD ("Ambow") sells educational and career enhancement services and products to students and recent graduates in the People's Republic of China. *Third Amended Complaint* ("TAC") ¶¶ 2, 3. On August 5, 2010, Ambow completed its initial public offering ("IPO") selling over 10 million American Depositary Shares ("ADS") at $10 per share and ADS began trading on the New York Stock Exchange. *Id.* ¶ 4. Ambow's ADS were registered pursuant to an amended registration statement ("Registration Statement") filed on July 20, 2010, and declared effective by the Securities and Exchange Commission ("SEC") on August 5, 2010. *Id.* ¶ 6. Ambow filed a prospectus for the offering on August 5, 2010. *Id.* ¶ 5.

Defendant Jin Huang ("Huang") signed Ambow's Registration Statement and has served as Ambow's President and Chief Executive Officer since 2000. *Id.* ¶ 96. Defendant Paul Chow ("Chow") served as Ambow's Chief Financial Officer from February 2010 to December 2011. *Id.* ¶ 99. Defendants Xuejun Xie ("Xie"), Daniel Phillips ("Phillips"), Lisa Lo ("Lo"), Mark Robert Harris ("Harris"), Tao Sun ("Sun"), and Sasha Chang ("Chang") were Ambow directors and also signed the Company's Registration Statement. *Id.* ¶¶ 100-105.

JS - 6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5062 PSG (AJWx) | Date | March 16, 2015 |
|---|---|---|---|
| Title | Srikanth Gudimetla, *et al.* v. Ambow Education Holding, *et al.* | | |

On June 11, 2012, former Plaintiff Srikanth Gudimetla ("Gudimetla") filed a class action lawsuit against Ambow, Huang, and Chow, on behalf of all persons or entities that purchased Ambow's ADS between May 18, 2011 and May 16, 2012.[1] *See* Dkt. # 1. The Complaint alleged that Defendants violated Section 10(b) and Section 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. §§ 78j(b) and 78t(a)) and Securities and Exchange Commission Rule 10b-5 (17 C.F.R. § 240.10b-5). *See Compl.* ¶ 10. On June 22, 2012, another Plaintiff, Byron Brown ("Brown"), filed a class action complaint in the Central District of California with similar allegations against Defendants. *See* Dkt. # 1 (CV 12-5480).

On August 20, 2012, Plaintiff Tianqing Zhang ("Zhang") filed a motion to consolidate the related cases, to appoint Zhang as lead plaintiff, and to appoint Zhang's attorneys as lead counsel. *See* Dkt. # 6. On November 19, 2012, the Court granted the motion, appointing Zhang as lead plaintiff and appointing Zhang's counsel, The Rosen Law Firm, P.A., as lead counsel ("Plaintiffs' Counsel"). *See* Dkt. # 18.

Plaintiffs then filed a Consolidated Amended Complaint on February 19, 2013 followed by a Second Consolidated Complaint on May 3, 2013. *See* Dkts. # 21, 32. On October 7, 2013, Defendants filed motions to dismiss and the Court stayed the hearings on the motions pending mediation with mediator Hunter H. Hughes, III that took place in December 2013. *See* Dkts. # 48, 51, 68; Dkt. # 102, *Final Approval Mot.* 2:14-16; *Declaration of Hunter H. Hughes, III* ("Hughes Decl.") ¶ 3. The mediation was unsuccessful and the Court granted Defendants' motions on February 6, 2014 giving Plaintiffs leave to amend. *See* Dkt. # 71.

On March 17, 2014 Plaintiffs Byron Brown, Tianqing Zhang, and Roberto Salazar filed their Third Amended Consolidated Complaint against Defendants Ambow, Huang, Chow, Xie, Harris, Lo, Phillips, Sun, and Chang (together, "Defendants"). Dkt. # 73. In the TAC Plaintiffs allege that "Ambow's Registration Statement and Prospectus, contained identical misrepresentations and omissions of fact" in violation of the federal securities laws. *See TAC.* Specifically, Plaintiffs' first claim is that Defendants Ambow, Huang, and Chow violated Section 10(b) of the Exchange Act and Rule 10b-5 of the Securities and Exchange Commission. *Id.* ¶¶ 236-244. The second claim is brought against Defendant Chow and Huang under Section 20(a) of the Exchange Act. *Id.* ¶¶ 245-251. Plaintiff's third claim is that Defendants violated Section 11 of the Securities Act. *Id.* ¶¶ 252- 263. Lastly, Plaintiffs' fourth claim is against Defendant Huang and Chow for violations of Section 15 of the Securities Act. *Id.* ¶¶ 264-270.

---

[1] Although the Complaint filed by Gudimetla defined the putative class as all persons or entities that purchased Ambow ADS between May 18, 2011 and May 16, 2012, the Third Consolidated Amended Complaint – which is the operative Complaint – expanded this putative class and defines it as: "all those who purchased Ambow's ADS between August 5, 2010 and February 27, 2013." *See* Dkts. 1, 73.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5062 PSG (AJWx) | Date | March 16, 2015 |
|---|---|---|---|
| Title | Srikanth Gudimetla, *et al.* v. Ambow Education Holding, *et al.* | | |

The parties underwent a second mediation on May 12, 2014 and agreed to settle the matter for $1,500,000. *Mot.* 4.

Under the proposed Settlement Agreement, Defendants will pay $1,500,000 to the Gross Settlement Fund. *Settlement Agreement* 15:25-16:18. The Gross Settlement Fund will be used to pay notice and administration expenses, any attorneys' fees and costs authorized by the Court, and any other fees and expenses authorized by the Court. *Id.* 16:11-18. The remaining amount will be the Net Settlement Amount and will be distributed among Class Members. *Id.*

The Settlement Agreement provides that Class Counsel may seek Attorneys' fees of up to one-third of the Settlement Amount. *Id.* 27:15-21. In the Proposed Notice to the Class, Class Counsel has indicated that it will seek: (1) $375,000 in attorneys' fees; (2) no more than $115,000 in litigation expenses; and (3) incentive awards of no more than $1,500 for each Plaintiff. *See Proposed Notice* at pg. 2. Class Counsel estimates that Class members will receive an average of $.06 per share of Ambow ADS from the Net Settlement Amount. *Id.*

Under the proposed Settlement Agreement, Class members that do not opt-out of the Class will release all Claims against Defendants in connection to their Ambow ADS acquisition. *See Settlement Agreement* at pg. 10; *Proposed Notice* at pg. 11.

Plaintiffs filed a motion for preliminary approval of the Settlement Agreement that the Court granted on December 2, 2014. *Prelim. Approval Order.* The Court certified the following class for settlement purposes only:

> All persons or entities who purchased or otherwise acquired Ambow's American Depository Shares ("ADS") during the period from its initial public offering on August 5, 2010 through and including February 27, 2013, and held such ADS through at least May 16, 2012, and were damaged by Defendant's alleged misconduct.

*Id.* at 3,7. The Court appointed Plaintiffs' Counsel as Class Counsel, Plaintiffs as Class Representatives, and Strategic Claims Services, Inc. as Claims Administrator. *Id.* at 7, 13.

After the Court granted preliminary approval, the Claims Administrator executed the notice plan by sending notice and proof of claim and release forms ("Claim Packages") to putative Class members. The Claims Administrator has mailed approximately 5,242 Claim Packages. *Declaration of Josephine Bravata* ("Bravata Declaration") ¶ 5. Additionally, the Claims Administrator had a Summary Notice published in *Investor's Business Daily* and *Globe Newswire* on December 12, 2014. *Id.* ¶8. Putative Class members had until February 16, 2015 to mail and postmark proof of claim forms or exclusion forms and until February 24, 2015 to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5062 PSG (AJWx) | Date | March 16, 2015 |
|---|---|---|---|
| Title | Srikanth Gudimetla, *et al.* v. Ambow Education Holding, *et al.* | | |

object to the Settlement Agreement. *Id.* ¶¶ 10-11, *Ex. A*. As of March 5, 2015, the Claims Administrator has received 432 Claim Forms, no requests for exclusion, and no objections to the Settlement Agreement. *Supplemental Declaration of Josephine Bravata* ("Bravata Supp. Decl.") ¶¶ 4-6.

Plaintiffs now seek final approval of the Class Settlement Agreement and the Plan of Allocation, as well as attorneys' fees, costs, and incentive awards. *Final Approval Mot.; Fees Mot.*

II. Discussion

    A. Final Approval of the Class Action Settlement

        i. *Legal Standard*

A court may approve a class action settlement "only after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(a)(2). In determining whether a settlement is fair, reasonable, and adequate, the district court must "balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1026 (9th Cir. 1998); *see Staton v. Boeing Co.*, 327 F. 3d 938, 959 (9th Cir. 2003). In addition to exploring these factors, the Court will also explore whether the settlement is a product of collusion among the negotiating parties. *See In re Bluetooth Headset Prods. Liab. Litig*, 654 F. 3d 935, 947 (9th Cir. 2011).

The Court must approve or reject the settlement as a whole. *See Hanlon*, 150 F. 3d at 1026 ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."). The Court may not delete, modify, or rewrite particular provisions of the settlement. *Id.* The Court must recognize that the settlement "is the offspring of compromise [,] [and] the question . . . is not whether the final product could be prettier, smarter, or snazzier, but whether it is fair, adequate and free from collusion." *Id.* at 1027.

        ii. *Discussion*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5062 PSG (AJWx) | Date | March 16, 2015 |
|---|---|---|---|
| Title | Srikanth Gudimetla, *et al.* v. Ambow Education Holding, *et al.* | | |

After evaluating the papers submitted by the parties, the Court is convinced that the Settlement Agreement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(a)(2).

> *a. Strength of the Plaintiffs' Case*

Although Plaintiffs believe that they have strong claims against the Settling Defendants, they are cognizant that they face many challenges that could lead to a significantly lower recovery for class members. *See Final Approval Mot.* 5:23-8:15; *Plaintiffs' Confidential Mem.* 5:6-11:4; *In re Heritage Bond Litig.*, 2005 WL 1594403, at *7 (C.D. Cal. 2005) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced.") (citations omitted).

Plaintiffs' claims against Defendants are grounded on their allegation that Ambow completed an initial public offering pursuant to a registration statement which contained misrepresentations and omissions of material fact in violation of the federal securities laws. *Plaintiffs' Confidential Mem.* 1:10-15. As the Parties point out, however, this Court has already dismissed Plaintiffs' claims as pleaded in their Second Amended Complaint on the ground that Plaintiffs failed to plead loss causation. Dkt. # 71; *Final Approval Mot.* 5:23-6:6; *Plaintiffs' Confidential Mem.* 5:6-6:10; *Defendants Ambow, Huang, Chow, and Chang's Confidential Mem.* ("Ambow Defendants' Confidential Mem.") 2:14-23; Defendants *Harris, Phillips, and Sun's Confidential Mem.* ("Ambow Directors' Confidential Mem.") 2:23-3:24. Plaintiffs' have filed a Third Amended Complaint in an attempt to address the Court's Order, but face the "risk that their amended pleadings would not survive the Defendants' challenges and would again be dismissed." *Final Approval Mot.* 6:7-10. This risk is especially high considering the Ninth Circuit's recent order in *Oregon Public Employees Retirement Fund v. Apollo Group Inc.*, holding that "Rule 9(b) applies to all elements of a securities fraud action, including loss causation." 774 F. 3d 598, 605 (9th Cir. 2014).

Plaintiffs' would face significant challenges even if they surpassed another round of motions to dismiss. For example, Defendants would likely argue that Plaintiffs do not have standing as to the Section 11 claim because they cannot trace their shares to Ambow's IPO registration statement. *Final Approval Mot.* 6:14-18. Furthermore, if this case proceeded to trial, Defendants would likely challenge Plaintiff's claims of scienter as to the Section 10 claim and it would be up for a jury to determine Defendants' state of mind. *Id.* 6:18-26. As Plaintiffs write, "no one can accurately predict how a particular witness would present in front of a jury." *Id.* 6:21-24. Proving damages would also be difficult for Plaintiffs and they are aware that Defendants would introduce experts to demonstrate that "Plaintiffs' losses were caused by factors other than the alleged fraud." *Id.* 7:10-12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5062 PSG (AJWx) | Date | March 16, 2015 |
|---|---|---|---|
| Title | Srikanth Gudimetla, *et al.* v. Ambow Education Holding, *et al.* | | |

After considering Plaintiffs' motion, as well as the confidential memoranda submitted by the Parties, the Court agrees that this factor weighs in favor of approving the Settlement Agreement. *See Plaintiffs' Confidential Mem.; Ambow Defendants' Confidential Mem.; Ambow Directors' Confidential Mem.*

      b. *Risk, Expense, Complexity, and Duration of Further Litigation*

In light of the "strong judicial policy that favor[s] settlements, particularly where complex class action litigation is concerned," *Linney v. Cellular Alaska P'ship*, 151 F. 3d 1234, 1238 (9th Cir. 1998), the Court finds that this factor weighs in favor of approval of the settlement.

Although the Parties have engaged in multiple motions to dismiss and have amended their Complaint multiple times, Plaintiffs predict that discovery in preparation for potential motions for summary judgment and trial would prove to be risky, costly, and reduce the possible recovery for the Class. *Final Approval Mot.* 8:16-9:14. According to Plaintiffs, Ambow has all of its assets and operations in the People's Republic of China. *Id.* 8:18-19. Consequently, the process of obtaining evidence would be "time-consuming and costly" especially in light of Defendants' potential arguments that "much of the information sought by Plaintiffs is prohibited from disclosure by Chinese state secrecy laws." *Id.* 8:20-23. Plaintiffs also submit that the necessity of experts would add significant expenses to the continued prosecution of this litigation. *Id.* 7:10-14. The Settlement Agreement, in contrast, "confers an immediate . . . and valuable cash benefits to Class Members." *Id.* 9:6-7.

      c. *Risk of Maintaining Class Action Status Through Trial*

Although the Court has certified the Class, the certification was for settlement purposes only. *Prelim. Approval Order.* Plaintiffs are correct that under Federal Rule of Civil Procedure 23(c)(1)(C) an "order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C); *Final Approval Mot.* 11:17-20. Plaintiffs are aware that there is a risk that the Court would find that Ambow did not trade in an efficient market, thereby likely precluding certification of Plaintiffs' Section 10 claims. *Final Approval Mot.* 6:12-14; *Plaintiffs' Confidential Mem.* 9:14-25. Therefore, this factor weighs in favor of final approval.

      d. *Amount Offered in Settlement*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5062 PSG (AJWx) | Date | March 16, 2015 |
|---|---|---|---|
| Title | Srikanth Gudimetla, *et al.* v. Ambow Education Holding, *et al.* | | |

The Settling Defendants will contribute a total of $1,500,000 to the gross settlement amount. *Final Approval Mot.* 9:16-17.

"[T]he very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F. 2d 615, 624 (9th Cir. 1982) (citations omitted). In that vein, the Ninth Circuit has explained that "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625 (citations omitted). Rather, any analysis of a fair settlement amount must account for the risks of further litigation and trial, as well as the expenses and delay associated with continued litigation.

Here, the Court recognizes that the gross settlement amount constitutes only around 5.6% of Plaintiffs' estimated damages of $26.7 million, but finds that amount reasonable considering the circumstances of this case. *See Final Approval Mot.* 9:16-11:16. First, Plaintiffs' estimate "does not take into account the various defenses" available to Defendants expounded above. *Id.* 311:3-5. Second, because many of the Defendants reside in the People's Republic of China, there are serious risks that even if Plaintiffs were successful in all aspects of their claims they may be unable to collect a judgment. *Id.* 9:3-5. Third, as Plaintiffs explain, "it is unlikely that Ambow could satisfy a greater judgment given that Ambow just emerged from provisional liquidation." *Id.* 9:1-3. Considering the risks inherent in this litigation and Ambow's financial situation, this factor weighs in favor of Final Approval.

e. *Extent of Discovery and Stage of the Proceedings*

This factor requires the Court to gauge whether Plaintiffs have sufficient information to make an informed decision about the merits of their case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F. 3d 454, 459 (9th Cir. 2000). The more discovery that has been completed, the more likely it is that the parties have "a clear view of the strengths and weaknesses of their cases." *Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007) (internal quotation marks and citation omitted).

Although the Parties have not engaged in discovery, Plaintiffs have sufficient information to make an informed decision in this instance. This litigation has been ongoing for more than two years and before reaching the Settlement Agreement, Plaintiffs, "conducted extensive factual investigation; consulted with damages and accounting experts concerning their claims; amended the complaint three times; briefed two rounds of motions to dismiss; and participated in two full-day mediation sessions." *Final Approval Mot.* 12:11-16; *Declaration of Laurence*

JS - 6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5062 PSG (AJWx) | | Date | March 16, 2015 |
|---|---|---|---|---|
| Title | Srikanth Gudimetla, *et al.* v. Ambow Education Holding, *et al.* | | | |

*Rosen* ("Rosen Decl.") ¶¶ 7-20. Plaintiffs, then, did not negotiate this Settlement Agreement in a vacuum, but evaluated "the strength and weaknesses of their allegations against Defendants . . . as well as the substantial risks of continued litigation" before entering into this agreement. *Final Approval Mot.* 12:18-23. This factor weighs in favor of granting Final Approval.

    f. *Experience and Views of Counsel*

  The recommendations of Plaintiffs' counsel are given a presumption of reasonableness. *See, e.g.*, *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citation omitted). "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re. Pac. Enter Sec. Litig.*, 47 F. 3d 373, 378 (9th Cir. 1995).

  Here, Plaintiffs' Counsel believes that "in view of [Ambow's] strained financial condition, and the Court's rulings on the Motions to Dismiss, the Settlement, which offers an immediate and definite cash benefit to Class [M]embers, is clearly preferable to continued and protracted litigation." *Rosen Decl.* ¶ 41. Furthermore, Plaintiffs' Counsel submit that they are "experienced and skilled practitioners in the securities litigation field," and after reviewing the Rosen Law Firm's resume, the Court sees no evidence to the contrary. *Id.* ¶ 48; *Ex.* 4. Consequently, this factor weighs in favor of Final Approval.

    g. *Presence of a Governmental Participation*

  This factor is neutral, as no government entities are participating in this case.

    h. *Reaction of Class Members*

  The response to the Settlement Agreement suggests that the Class finds the settlement to be fair, reasonable, and adequate. *See, e.g.*, *Hanlon*, 150 F. 3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."). Although only 432 Claim Forms had been submitted as of March 5, 2015, after the Claims Administrator mailed out 5,242 Claim Packages to potential class members and nominees, putative class members have neither mailed exclusion forms nor objected to the Settlement Agreement. *See Reply* 1:1-9; *Bravato Supp. Decl.* ¶¶ 3-6. Accordingly, this factor weighs slightly in favor of Final Approval.

    i. *Collusion Among the Negotiating Parties*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5062 PSG (AJWx) | Date | March 16, 2015 |
|---|---|---|---|
| Title | Srikanth Gudimetla, *et al.* v. Ambow Education Holding, *et al.* | | |

The Court also finds that the Settlement Agreement is free from collusion, which weighs in favor of settlement approval. The Ninth Circuit puts "a good deal of stock in the product of arms-length, non-collusive, negotiating resolution . . ." *Rodriguez v. W. Publ'g Corp.*, 563 F. 3d 948, 965 (9th Cir. 2009).

Here, Parties have submitted memoranda assuring the Court that the Settlement Agreement is a product of arms-length, non-collusive negotiations. *See Final Approval Mot.*13:1-26; *Ambow Defendants' Confidential Mem.* 9:6-10; *Ambow Directors' Confidential Mem.* 1:18-26. The Court sees no evidence to the contrary – especially considering Plaintiffs' reasonable request for attorneys' fees and costs, assessed below, and the mediator's declaration that the "Settlement was the result of rigorous arm's-length negotiations conducted in a reasonable manner and in good faith" and that the Settlement Agreement is "fair, reasonable, and adequate." *See Hughes Decl.* ¶ 11.

The factors weigh in favor of approval of the settlement. *See Hanlon*, 150 F. 3d at 1026. Accordingly, the Court GRANTS Plaintiffs' motion for Final Approval of the Settlement Agreement.

  B.   Plan of Allocation

A plan of allocation under Rule 23 "is governed by the same standards of review applicable of the settlement as a whole; the plan must be fair, reasonable, and adequate." *Vinh Nguyen v. Radient Pharma. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. 2014). To be approved, the plan needs to have a reasonable, rational basis. *Id.* Specifically, within the context of a securities class action, a plan can be reasonable if it, "fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue." *Id.* (citing *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 669 (E.D. Va. 2001).

Under Plaintiffs' Plan of Allocation, Class Members who submit forms will be entitled to a *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's Recognized Claim. *Rosen Decl.* ¶¶ 30-32; *Class Notice*. The Recognized Claim, in turn, is calculated "based upon when the claimants bought and sold Ambow ADS, and whether they retained shares through the corrective disclosures alleged in the Complaint." *Rosen Decl.*¶ 32. Under this Plan of Allocation any funds that "shall remain in the Net Settlement Fund after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants who are entitled to participate in this Settlement cash their checks" will be distributed to the University of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5062 PSG (AJWx) | Date | March 16, 2015 |
|---|---|---|---|
| Title | Srikanth Gudimetla, *et al.* v. Ambow Education Holding, *et al.* | | |

San Francisco's School of Law's Investor Justice Clinic. *See Class Notice; Final Approval Mot.* 14:15 – 16:9.

The Plan of Allocation is reasonable and has a rational basis. To calculate the a Claimant's Recognized Claim Plaintiffs do not unfairly discriminate between Class Members, but take into account both the timing of their purchase and the losses they suffered.

The Court also approves of Plaintiffs' proposed cy pres award. The cy pres doctrine permits courts to put unclaimed portions of a settlement fund "to its next best compensation use, e.g., for the aggregate, indirect, prospective benefit of the class." *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (9th Cir. 2007). The Ninth Circuit has interpreted this "next best use" principle to require that cy pres distributions "account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members." *Nachsin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011); *see also Six (6) Mex. Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990). A cy pres distribution in a class action settlement should (1) address the objectives of the underlying statutes; (2) target the plaintiff class; or (3) provide reasonable certainty that any member will be benefited. *Nachsin*, 663 F.3d at 1039-40.

Here, awarding any unclaimed funds to the University of San Francisco's ("USF") School of Law's Investor Justice Clinic is consistent "the objectives of the Securities Laws" because the clinic is "aimed at assisting investors who have been harmed or who are at risk of being harmed by securities fraud." *Final Approval Mot.* 16:4-6. Additionally, Plaintiffs submit that Plaintiff's Counsel "has no connection with the USF Investor Justice Clinic." *Id.* 16:8-9.

Therefore, the Court GRANTS Plaintiffs' motion for approval of the Plan of Allocation.

C.      Motion for Attorneys' Fees and Costs

Plaintiffs request the following to be disbursed from the gross settlement amount: (1) $375,000 (which constitutes 25% of the gross settlement amount); (2) $100,868.84 in litigation expenses; and (3) $4,500 in incentive awards ($1,500 for each Plaintiff). *See Fees Mot.* 1:1-7.

   i.      *Legal Standard*

Awards of attorneys' fees in class action cases are governed by Federal Rule of Civil Procedure 23(h), which provides that after a class has been certified, the Court may award reasonable attorneys' fees and nontaxable costs. The Court "must carefully assess" the reasonableness of the fee award. *See Staton*, 327 F. 3d at 963; *see also Browne v. Am. Honda*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5062 PSG (AJWx) | Date | March 16, 2015 |
|---|---|---|---|
| Title | Srikanth Gudimetla, *et al.* v. Ambow Education Holding, *et al.* | | |

*Motor Co., Inc.*, No. CV 09-06750 MMM (DTBx), 2010 WL 9499073, at *3-5 (C.D. Cal. Oct. 5, 2010) (explaining that in a class action case, the court must scrutinize a request for fees when the defendant has agreed to not oppose a certain fee request as part of a settlement).

Where litigation leads to the creation of a common fund, courts can determine the reasonableness of a request for attorneys' fees using either the common fund method or the lodestar method. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F. 3d 935, 942, 944-45 (9th Cir. 2011) (finding that when a settlement establishes a common fund for the benefit of a class, courts may use either the lodestar method or the percentage-of-recovery method to gauge the reasonableness of a fee request, but encouraging courts to employ a second method as a cross-check after choosing a primary method.). The Court will analyze Counsels' fee request under both theories.

        ii.     Discussion

              a.     *Percentage of the Common Fund*

Under the percentage-of-recovery method, courts typically calculate 25% of the fund as a benchmark for a reasonable fee award. *See In re Bluetooth*, 654 F. 3d at 942 ("courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award").[2] The percentage can range, however, and Courts have awarded more than 25% of the fund as attorneys' fees when they have deemed a higher award to be reasonable. *See Singer v. Becton Dickinson and Co.*, 2010 WL 2196104, at * 8 (S.D. Cal. 2010) (finding an award of 33.3% percent of the common fund to be reasonable because class counsel took the case on a contingent basis and litigated for two years, awards usually range from 20% to 50%, and no class member objected to the award); *Gardner v. GC Services, LP*, 2012 WL 1119534, at *7 (S.D. Cal. 2012) (finding that a departure from the 25% benchmark was reasonable when 1) the results achieved for the class were very favorable, 2) the risks of litigation were substantial, and 3) the case was complex). When assessing the reasonableness of a fee award under the common fund theory courts consider, *inter alia*, "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *In re Omnivision Technologies*, 559 F. Supp. 1036, 1046 (N.D. Cal. 2008) (citing *Vizcaino v. Microsoft Corp.*, 290 F. 3d 1043, 1048-50 (9th Cir. 2002)).

---

[2] The Court notes that in calculating attorneys' fees using the common fund method, it is appropriate to take a percentage of the Gross Settlement Amount, not of the amount claimed by the Class Members. *See Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980), 480-81 (finding that under the common-fund doctrine class counsel are entitled to a reasonable fee based on the funds "awarded to the prevailing class").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5062 PSG (AJWx) | Date | March 16, 2015 |
|---|---|---|---|
| Title | Srikanth Gudimetla, *et al.* v. Ambow Education Holding, *et al.* | | |

Plaintiffs' request of 25% of the gross settlement amount – this Circuit's benchmark percentage for reasonableness – carries with it a presumption of reasonableness. *See Final Approval Mot.* 4:23-5:2. Consideration of these factors also supports a finding of reasonableness in this instance. *See In re Omnivision Technologies*, 559 F. Supp. at 1046. As elaborated above, Class Counsel has been able to obtain a reasonable result for the Class Members in light of many challenges and uncertainties. This is especially significant because there is a real risk that even if Plaintiffs prevail in all aspects of litigation, they may end up with no recovery for the Class Members. *See Fees Mot.* 11:1-13:10.

Class Counsel faced significant risks in their prosecution of this case that ranged from difficulty prevailing on substantive issues – discussed at length above – to being unable to recover any funds in spite of a complete victory. *Id.* 11:7-21. Plaintiffs worked in the "face of strong opposition from highly respected large securities defense firms" and were able to secure a reasonable settlement. *Id.*14:4-18. Plaintiffs' Counsel litigated this lawsuit on a "completely contingent" basis and has "incurred significant expenses in litigating this Action for the benefit of the class." *Id.* 15:6-11. Lastly, an award of 25% of the gross settlement amount is consistent with awards granted in similar complex litigation. *See In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 433 (S.D.N.Y. 2001) (awarding fee which constituted 25% of the gross settlement amount in securities case); *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) (noting that fee awards are often more than 25% in under $10 million cases).

Plaintiffs' fee request is reasonable under the common fund theory.

### b. *Lodestar Cross-Check*

Plaintiffs submit that under a lodestar method, they are entitled to $572,709 and, as mentioned above, they are only requesting $375,000. *See Fees Mot.* 16:16-17. Plaintiffs' request is also reasonable under a lodestar cross-check analysis.

To determine attorneys' fees under the lodestar method a court must first calculate the lodestar by "multiplying the reasonable hours expended by a reasonable hourly rate. The Court may then enhance the lodestar with a 'multiplier,' if necessary, to arrive at a reasonable fee." *In re Washington Public Power Supply System Securities Litig.*, 19 F. 3d 1291, 1294 n.2 (9th Cir. 1994) (citations omitted).

### 1. *Reasonable Rate*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5062 PSG (AJWx) | Date | March 16, 2015 |
|---|---|---|---|
| Title | Srikanth Gudimetla, *et al.* v. Ambow Education Holding, *et al.* | | |

The reasonable hourly rate is the rate prevailing in the community for similar work. *See Gonzalez v. City of Maywood*, 729 F. 3d 1196, 1200 (9th Cir. 2013) ("[T]he court must compute the fee award using an hourly rate that is based on the 'prevailing market rates in the relevant community.'") (citation omitted); *Viveros v. Donahue*, CV 10-08593 MMM (Ex), 2013 WL 1224848, at *2 (C.D. Cal. 2013) ("The court determines a reasonable hourly rate by looking to the prevailing market rate in the community for comparable services."). The relevant community is the community in which the court sits. *See Schwarz v. Sec. of Health & Human Servs.*, 73 F. 3d 895, 906 (9th Cir. 1995). In an applicant fails to meet its burden, the Court may exercise its discretion to determine reasonable hourly rates based on its experience and knowledge of prevailing rates in the community. *See*, *e.g.*, *Viveros*, 2013 WL 1224848, at *2; *Ashendorf & Assocs. V. SMI-Hyundai Corp.*, CV 11-02398 ODW (PLAx), 2011 WL 3021533, at *3 (C.D. Cal. 2011); *Bademyan v. Receivable Mgmt. Servs. Corp.*, CV 08-00519 MMM (RZx), 2009 WL 605789, at *5 (C.D. Cal. 2009).

Plaintiffs contend that the rates used by Class Counsel to calculate their lodestar amount are lower than the rates of law firms "with active securities litigation practices in Los Angeles." *Fees Mot.*19:1-17. Here, the rate for partners ranges from $600 to $750. *See Rosen Decl.* ¶ 45. The rates for associates, on the other hand, range from $425 to $550. *See id.* Class Counsel also include in their lodestar an amount attributable to paralegal work with a rate ranging from $200 to $225. *See id.* The Court has reviewed Class Counsel's submissions regarding the experience and qualifications of the attorneys who worked on this case. After considering Class Counsel's statements regarding market rates for attorneys in this field and the Court's own experience with hourly rates in the Los Angeles area, the Court is not convinced that the requested rates are reasonable and will use, instead, a blended rate of $600 for partners and $425 for associates. As discussed below, however, the change in rate does not change the Court's finding that the request is reasonable in light of the negative multiplier.

### 2. *Reasonable Hours Expended*

With regard to the hours expended, an attorney award should include compensation for all hours reasonably expended prosecuting the matter, but "hours that are excessive, redundant, or otherwise unnecessary" should be excluded. *Costa v. Comm'r of Soc. Sec. Admin.*, 690 F. 3d 1132, 1135 (9th Cir. 2012).

Here, Class Counsel state that they have expended 1,039 hours of attorney and paralegal time litigating this matter. *Rosen Decl.* ¶ 44. The descriptions of the work, the experience level of the professional completing the work, and the duration of time devoted to particular tasks spanning a time period covering initial research, drafting of complaints, and motion drafting efforts appear proper to the Court. *See id.* ¶¶44-48, *Ex.* 3. Moreover, the Court does not detect

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5062 PSG (AJWx) | Date | March 16, 2015 |
|---|---|---|---|
| Title | Srikanth Gudimetla, *et al.* v. Ambow Education Holding, *et al.* | | |

any duplication of work. Therefore, the Court concludes that the hours expended on this case are reasonable. Even if the Court felt inclined to discount the number of hours expended by a small percentage to account for duplication not detected by the Court, the negative multiplier that results from Plaintiffs' request renders this fee request reasonable.

3. *Multiplier*

As indicated above, Plaintiffs' fee request constitutes a large negative multiplier of plaintiffs' lodestar amount. Plaintiffs' lodestar amount is $572,709 and they are requesting $375,000. Plaintiffs' request is reasonable in light of the amount of work Class Counsel has expended in this litigation, the risks taken by Class Counsel, and the Settlement Agreement that they procured for the Class Members. *See In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *16 (N.D. Cal. 2007) ("The resulting so-called negative multiplier suggests that the percentage-based amount is reasonable and fair based on the time and effort expended by class counsel.").

Accordingly, the Court GRANTS Plaintiffs' motion for attorneys' fees.

c. *Litigation Costs*

In addition to attorneys' fees, Plaintiffs also request reimbursement of expenses incurred throughout litigation. Plaintiffs contend that Plaintiffs' Counsel has incurred "expenses in an aggregate amount of $100,868.84." *Fees Mot.* 20:1-2. "The litigation expenses for which Plaintiffs' Counsel seeks reimbursement were largely incurred for professional expert and consultant fees, for private investigation fees, and for the mediation services of Hunter Hughes." *Rosen Decl.* ¶ 78, *Ex.* 5. This fee request also includes class notice expenses as well as other expenses that were "necessary to the prosecution of the action." *Fees Mot.* 22:9-25. The Court has reviewed Class Counsels' costs and is satisfied that they are reasonable.

Resultantly, the court GRANTS Plaintiffs' motion for costs in the amount of $100,868.84.

D. Motion for Incentive Awards

Plaintiffs also request $1,500 in incentive awards to "reimburse them for reasonable costs and expenses related to the representation of the class." *Fees Mot.* 23:5-11.
"Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F. 3d 948, 958 (9th Cir. 2009) (citations omitted); *see In re Toys R Us-Delaware, Inc. Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 470 (C.D. Cal. 2014).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5062 PSG (AJWx) | Date | March 16, 2015 |
|---|---|---|---|
| Title | Srikanth Gudimetla, *et al.* v. Ambow Education Holding, *et al.* | | |

When considering requests for incentive awards, courts consider five principal factors: (1) the risk to the class representative in commencing suit, both financial and otherwise ; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. *Van Vraken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Neither Plaintiff was "promised anything of value in connection with their participation in the Action or their approval of the Settlement." *Rosen Decl.* ¶ 85; *see In re Toys R. Us*, 295 F.R.D. at 471 ("An incentive award may be appropriate when a class representative will not gain any benefit beyond that he would receive as an ordinary class member."). Nevertheless, all three Plaintiffs expended time and effort contributing to this litigation by, *inter alia*, gathering factual information about Ambow, reviewing drafts of the Compliant, and communicating with their Counsel about the litigation. *See Declaration of Roberto Salazar; Declaration of Byron Brown; Declaration of Tianqing Zhang.* Furthermore, an award of $4,500 in incentive awards does not significantly reduce the funds available to the Class Members. *See West v. Circle K Stores, Inc.*, 2006 WL 1652598, at *12 (E.D. Cal. June 13, 2006) (finding that enhancement payment was not unfair when it would not "significantly reduce the amount of settlement funds available to the rest of the class").

Accordingly, the Court GRANTS Plaintiffs' motion for incentive awards.

III.   Conclusion

For the reasons stated above, Plaintiffs' motions for final approval of class settlement and the plan of allocation; attorneys' fees and costs; and incentive awards are GRANTED. Accordingly, it is HEREBY ORDERED AS FOLLOWS:

1. The Court approves settlement of the action between Plaintiffs and the Settling Defendants, as set forth in the Settlement Agreement as fair, just, reasonable and adequate. The Parties are directed to perform their settlement in accordance with the terms set forth in the Settlement Agreement;

2. Class Counsel is awarded $375,000 in attorneys' fees and $100,868.84 in costs. Additionally, Plaintiffs are awarded $1,500 each. The Court finds that these amounts are warranted and reasonable for the reasons set forth in the moving papers before the Court;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5062 PSG (AJWx) | Date | March 16, 2015 |
|---|---|---|---|
| Title | Srikanth Gudimetla, *et al.* v. Ambow Education Holding, *et al.* | | |

3.   The Claims Administrator is authorized to disburse funds from the Settlement Account pursuant to the terms of the Settlement Agreement and this Order; and

4.   Without affecting the finality of this Judgment in any way, this Court hereby retains exclusive jurisdiction over the Defendants and the Settlement Class Members for all matters relating to the Litigation, including the administration, interpretation, effectuation, or enforcement of the Stipulation or Settlement and this Order and Final Judgment, and including any application for fees and expenses incurred in connection with administering and distributing the settlement proceeds to the Settlement Class Members.

**IT IS SO ORDERED.**